UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **VIOLA MYERS,**<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | MASTER FILE: 07-CV-609 (WJM)<br><br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

James Langton
Langton & Alter, Esqs.
2096 St. Georges Avenue
P.O. Box 1798
Rahway, NJ 07065

(*Counsel for Plaintiff*)

Sheena V. Barr
Social Security Administration
26 Federal Plaza
Room 2904
New York, NY 10278

(*Counsel for Defendant*)

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Viola Myers seeks review of a final determination by the Commissioner of the Social Security Administration denying her application for Social Security disability insurance benefits and Supplemental Security Income payments. Myers asserts that the ALJ committed three errors: (1) by finding that Myers had only moderate non-

exertional limitations, rather than marked or severe limitations, (2) by relying on a vocational expert's answer to a hypothetical question that did not accurately reflect the evidence, and (3) by disregarding the vocational expert's testimony that Myers would be unable to find work.  The Court finds that Myers's appeal is largely nonsensical and wholly without merit.  Accordingly, the Commissioner's decision is **AFFIRMED**.

I.      **FACTS AND PROCEEDINGS**

Plaintiff is Viola Myers, a fifty-four year old woman.  (R. 197.)  Myers suffers from depression.  (R. 197.)  As a result, she has difficulty functioning socially, concentrating, and remembering things.  (R. 199, 309–12.)  Myers also has physical injuries, though they appear less serious than her depression.  (R. 199, 313–14.)  Specifically, she suffers from back pain and asthma.  (R. 192–95, 313–14.)

Out of work, Myers filed a claim for Social Security disability insurance benefits and Supplemental Security Income payments.  (R. 191.)  After much procedure not pertinent to this appeal, ALJ Richard De Steno held the hearing at issue.  (R. 191.)

At the hearing, the ALJ received testimony from three witnesses.  Myers testified about her afflictions.  (R. 307–15.)  Expert witness Dr. William Gordon, a clinical psychologist, testified more specifically about Myers's psychological afflictions.  (R. 319–27.)  Gordon testified that Myers had moderate impairments in her social functioning and ability to concentrate.  (R. 321–22.)  Gordon added that Myers would probably be able to interact on a daily basis with coworkers and supervisors but that she would likely

be unable to work with a difficult supervisor, particularly one who was "authoritarian." (R. 322.) Finally, vocational expert Rocco Meola testified about what work might be available to a person with Myers's limitations. (R. 330–37.) During Meola's testimony, the ALJ asked Meola hypothetically about the employment prospects for an individual of Myers's age, education, and experience who could perform medium or light work but would be unable to work with a particularly authoritarian or harsh supervisor. (R. 330.) Meola responded by listing several jobs available in significant numbers available to a person with such limitations. (R. 330–31.)

Based on this evidence, the ALJ concluded that Myers was not disabled. (R. 197–202.) In support of this conclusion, the ALJ found that Myers retained the residual functional capacity to perform medium work and that she had "moderate" limitations on her abilities to function socially, concentrate, and maintain persistence or pace. (R. 199.) The ALJ additionally found that Myers retained the residual functional capacity to work only in an environment requiring simple, repetitive tasks that was free from an authoritative or harsh supervisor, which might aggravate Myers's depression. (R. 200.) The ALJ then relied upon the vocational expert's testimony to find that jobs were available to a person with such limitations. (R. 201–02.) Accordingly, the ALJ concluded that Myers was not disabled and thus not entitled to her requested relief. (R. 202.)

Myers now appeals. She argues that the ALJ committed three errors: (1) by

3

finding that Myers had only moderate non-exertional limitations, rather than marked or severe limitations, (2) by relying on a vocational expert's answer to a hypothetical question that did not accurately reflect the evidence, and (3) by disregarding the vocational expert's testimony.

## II.   STANDARD OF REVIEW

In reviewing the ALJ's decision, this Court is bound by factual findings that are supported by substantial evidence.  Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000).  This Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  The requirement that factual findings are supported by substantial evidence is not onerous, requiring only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)).

## III.   DISCUSSION

The Social Security Administration has promulgated a five-step evaluation process to determine whether a claimant is disabled.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004); see 20 C.F.R. § 404.1520 (2007).  First, if the claimant is currently engaged in substantial gainful activity, she is not disabled. § 404.1520(a)(4)(i).  Second, if the claimant does not suffer from a "severe" impairment, she is not disabled. § 404.1520(a)(4)(ii).  Third, if the claimant suffers from an impairment listed in appendix 1

of 20 C.F.R. part 404, subpart P, she is disabled. § 404.1520(a)(4)(iii).  Fourth, if the claimant retains the "residual functional capacity" ("RFC") to perform her past relevant work, she is not disabled. § 404.1520(a)(4)(iv).  Fifth, and finally, if the claimant retains the RFC to perform other work, she is not disabled. § 404.1520(a)(4)(v).

Here, the ALJ found and the parties agree on the first four steps.  Myers was not engaged in substantial gainful activity, she suffered from severe impairments, none of her impairments was listed in appendix 1, and she has no past relevant work.  (R. 203.)  The questions are whether substantial evidence supports the ALJ's determination of Myers's RFC, specifically whether her non-exertional limitations were moderate, and the ALJ's determination that someone with such an RFC may perform other available work.

    A.    **The ALJ's Determination of Myers's RFC**

Myers claims that the ALJ lacked substantial support for his determination of her RFC.  (Br. in Supp. of Pl. 18.)  Specifically, Myers claims that her impairments to concentration and social functioning were "marked or severe," rather than "moderate," as the ALJ found.[1]  (Br. 18.)  The Court disagrees.

Substantial evidence supported the ALJ's determination that Myers suffered from moderate impairments to concentration and social functioning, as opposed to marked or severe impairments.  This was precisely Dr. Gordon's testimony at the hearing, at which he stated "[s]he's had moderate interpersonal impairments and moderate impairments in

---

[1] Myers does not otherwise challenge the ALJ's determination of her RFC.

5

concentration." (R. 322.) This finding also conformed to the medical reports in the record, in which Dr. Alec Roy, a state psychiatrist, diagnosed Myers as having a Global Assessment of Functioning score of 55, indicating moderate social and occupational impairment. (R. 113.) Thus the ALJ's determination of Myers's RFC was supported by substantial evidence.

Myers's argument to the contrary is incoherent. Myers rests her argument on testimony from the vocational expert in which the vocational expert suggests that in jobs requiring medium or light work the supervisor may often need to yell and thus may be considered "authoritarian." (Br. 17–18.) Myers concludes that "such opinion by the vocational expert would indicate . . . that plaintiff would suffer a marked or severe impairment to concentration and interpersonal relations." (Br. 18.) The Court finds no logic or sense in such reasoning. The vocational expert made no attempt and indeed was not qualified to assess the severity of Myers's impairments. And as explained above, the ALJ's determination that Myers's psychological impairments were moderate is supported by substantial evidence.

**B.     The ALJ's Hypothetical**

Myers claims that the ALJ's hypothetical question to the vocational expert, about the employment prospects of a person with Myers's limitations, did not accurately convey those limitations. (Br. 17.) According to Myers, the ALJ's hypothetical "postulated that plaintiff could perform medium work or light work but that her only psychiatric

restriction was that she was limited to 'simple repetitive tasks.'" (Br. 17.)  The Court disagrees.

  While Myers is correct that a hypothetical question posed to a vocational expert should convey all of a claimant's impairments, Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (holding that a vocational expert's response to an inaccurate or incomplete hypothetical cannot constitute substantial evidence), Myers's factual allegations are simply wrong.  The following is the hypothetical that the ALJ provided to the vocational expert:

> Mr. Meola, consider an individual born in March of 1952 with limited education.  She stated today she left high school in the twelfth grade.  For the moment it appears, although she's had many short term, low earning jobs we'll, for the moment consider no relevant past work experience, that would qualify as past relevant work.  And as I said earlier, we're considering the period from June 4, 2000 to the present.  With the residual functional capacity for lifting and carrying objects weighing up to fifty pounds, frequently lifting and carrying objects weighing up to twenty-five pounds.  Sitting, standing and walking up to six hours in an eight hour day.  Pushing and pulling arm and leg controls, involving no greater than simple repetitive tasks in an environment free of excessive pulmonary irritants, not involving supervision by a particularly authoritarian or harsh supervisor.  Are there jobs in the region such an individual could perform?  And what region do you have in mind?  (R. 330.)

This hypothetical accurately and completely conveyed Myers's impairments, as described above, to the vocational expert.  Accordingly, the Court finds that the vocational expert's testimony may constitute substantial evidence of the employment prospects for a person

with Myers's limitations.

### C. Whether the ALJ Disregarded the Vocational Expert's Testimony

Myers argues that the ALJ ignored the vocational expert's testimony. (Br. 21.) According to Myers, "[t]here is no, absolutely no doubt with regard to the vocational expert's testimony. If plaintiff is 'moderately limited' in concentration or interpersonal relations, she cannot work." (Br. 20.) The Court disagrees.

Once again, Myers exhibits a flexible relationship with the facts on record. In response to the ALJ's hypothetical question—which, as explained above, accurately conveyed Myers's limitations to the ALJ—the vocational expert testified that jobs would be available to Myers despite her limitations. (R. 331–33.) The vocational expert listed many such jobs: porter, carton maker, laundry worker, ingredient scaler, garment sorter, inspector, labeler, and folder. (R. 331–33.) The vocational expert acknowledged that in many jobs requiring medium or even light labor, supervisors might need to shout to be heard and that this might appear "authoritarian" to Myers. (R. 332.) Ultimately, however, the vocational expert testified that he could not state broadly whether a given job entailed dealing with an overbearing supervisor since this was a job-specific inquiry. (R. 333.) Thus the vocational expert testified that a person with Myers's limitations should be able to find work.

To support Myers's argument to the contrary, she points to the vocational expert's answers to questions posed by Myers's counsel (Br. 18–19), but these questions were

8

extremely long and confusing.  For example, at the hearing Myers's counsel posed the following convoluted and cluttered question:

> I'm referring now, Mr. Meola, to a Social Security form.  47-34, mental residual functional capacity assessment, which is used in every case where there is a severe psychiatric impairment.  I'm referring to this one, 5F.  It's dated '03, January of '03.  And it shows, it's limit-, it has moderate, no, not significantly limited, moderately limited and marked limited.  And it goes into different areas, understanding and memory, sustained concentration and persistence.  Social interaction and adaption.  Basically going into different areas that someone would, I assume, the different categories of work related functions that would have to be, have to be done.  Now, this one is very similar, if not exact to the one that was later filled out by another State Agency psychiatrist or psychologist.  This one being done in 2005.  And reviewed by Dr. Gordon, to which he basically said that he was, he had reviewed them and found them, found them, in his opinion, basically he agreed, he agreed with the opinion and didn't point out anything differently and noted, in his prior testimony before he even saw these he had noted, I assume, he had saw them when he reviewed the file and that's what he based some of his opinion on.  He noted the moderate limitations.  I think he went moderate to marked in one area, which was the ability to sustain, sustain work over a period of time, but just with the moderates here, and I'm referring now to basically number six, number eleven, we also have number nine.  But just six and eleven alone, with the moderate limitations in there, the ability to complete a normal workday without interruptions and psychologically based symptoms or work week.  Also, the ability to maintain attention and concentration for extended periods, not for short periods, but extended periods. And there's moderate limitations here.  Would that affect somebody's ability to do any type work, including the jobs that you gave today?  (R. 335–36.)

The lengthy and cluttered wording of this question alone justifies disregarding the

vocational expert's response.

But even considering the response, the vocational expert's testimony does not strongly support Myers's argument. To the above quoted question, the vocational expert responded that a person with such limitations "would not be able to function in a *competitive* work environment." (R. 336.) (emphasis added) This seems to comport with the vocational expert's earlier testimony that while jobs do exist for someone with Myers's physical and psychological limitations, some of these jobs—but not all—might entail a hyper-productive or -competitive environment, which Myers would be unable to bear. (R. 333.) In any event, the vocational expert's answer to the ALJ's much more clearly worded question establishes his opinion that there indeed does exist work for someone with Myers's limitations. Accordingly, the ALJ's conclusion to that effect was supported by substantial evidence.

## IV. CONCLUSION

The ALJ's determination that Myers was not disable was supported by substantial evidence. Accordingly, that decision is **AFFIRMED**.


s/ William J. Martini
William J. Martini, U.S.D.J.